AMERICAN TEMPERANCE LIFE INS. ASS'N OF CITY OF NEW YORK v. SOLOMON et al.

(Circuit Court of Appeals, Third Circuit. November 25, 1913.)

No. 1,756.

1. TRIAL (§ 105*)—DOCUMENTS—PROOF BY SUBSCRIBING WITNESSES—WAIVER—ADMISSION WITHOUT OBJECTION.

Where an application for life insurance, alleged to have been executed by decedent before subscribing witnesses, was admitted in evidence without objection, it was in the case for all purposes as though it had been proved by the subscribing witnesses, and it could not thereafter be objected that the party introducing the same did not call such witnesses.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 260–266; Dec. Dig. § 105.*]

2. TRIAL (§ 105*)—FALSE REPRESENTATIONS—PROOF—PRIOR APPLICATION—INSTRUCTIONS.

Where a prior application for life insurance, alleged to have been executed by insured by a mark before witnesses, and rejected by the insurer, was admitted in evidence without objection, and without proof of its execution by the subscribing witnesses, to show the falsity of an answer in a subsequent application by insured, in which he stated that he had never been rejected, an instruction, submitting to the jury the question whether defendant had proved that such alleged prior application was in fact executed by insured because the subscribing witnesses had not been called to testify, and further instructing that, if the jury should find that insured did not sign such application, then it was not his application, was erroneous.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 260–266; Dec. Dig. § 105.*]

In Error to the District Court of the United States for the Western District of Pennsylvania; James S. Young, Judge.

Action by Louis Solomon and others, as administrators of Max Solomon, deceased, for use, etc., against the American Temperance Life Insurance Association of the City of New York. Judgment for plaintiffs, and defendant brings error. Reversed, and new trial ordered.

George R. Wallace, of Pittsburgh, Pa., for plaintiff in error.

George H. Quail, of Lima, Ohio, and Weil & Thorp, of Pittsburgh, Pa., for defendants in error.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below, the plaintiffs, the administrators of the estate of Max Solomon, citizens of Pennsylvania, brought suit against the American Temperance Life Insurance Association, a corporate citizen of New York, to recover on a policy

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of insurance, issued by said company on the life of Max Solomon. The company defended, inter alia, on the ground that decedent in his application for said policy had stated that no proposal to insure his life had ever been postponed or declined, when in truth and fact he had applied to the Hartford Life Insurance Company for life insurance and been rejected. To sustain such defense the defendant had the officers of the Hartford Company produce from its files a prior printed and written application for insurance on his life by Max Solomon, which that company had rejected. The printed indorsement on the form stated it was an "application for insurance to the Hartford Life Insurance Company, Hartford, Connecticut." This application was signed by a mark, purporting to be that of Solomon, and was witnessed by A. Kann, the agent of the Hartford Company. The defendant, in connection with the testimony of the officers of the Hartford Company, then offered the application in evidence. Whereupon, as the record shows, "counsel for plaintiffs offer no objection to Exhibits A and B, being the application and the medical examination."

[1] In the absence of any objection to the admission of the application thus offered, this pertinent and material paper was thus placed in evidence with the same force and effect as though the subscribing witness had been called and duly proved its execution by Solomon, the applicant. That on objection to the admission of a writing, proof by the subscribing witness is necessary, is a recognized rule of evidence. 3 Greenleaf (14th Ed.) § 569, and the reason of such rule is—

"that a fact may be known to the subscribing witness not within the knowledge or recollection of the obligor, and that he is entitled to avail himself of all the knowledge of the subscribing witness relative to the transaction. The party, to whose execution he is a witness, is considered as invoking him, as the person to whom he refers to prove what passed at the time of attestation."

On the other hand, if a writing to which there is a subscribing witness is offered in evidence, and no objection to its admission or requirement of proof of its execution is made, it is equally clear that the proponent of the paper is not required to call the subscribing witness, for, in reason, no such proof is required. Laing v. Kaine, 2 B. & P. 85, cited in 1 Greenleaf, § 572. The application of Max Solomon being, therefore, thus in evidence by the consent of the plaintiffs and without insistence, when offered, that the subscribing witness be called, such paper evidentially stood as proof of the act of Max Solomon, and he was chargeable with all legal consequences that followed his making the same.

[2] Such being the course followed by the parties in adducing the evidence, and such the evidential status of the application thus admitted without objection and by consent, the court, referring to Solomon's application to the defendant company said:

"Now, I have said to you, gentlemen of the jury, that the first misrepresentation is as to a policy of insurance in another company; and, so that we may have that clearly before us, I will read the question and answer raising that issue:

"'Question 10. Has any proposal to insure your life ever been postponed or declined? If so, by what company, association or society, and for what reason?' The answer being, 'No.'

" 'Has any proposal or application to insure your life or for membership ever been made to any company, association, society or agent, upon which a policy of insurance or certificate of membership has not been received by you, in person for the full amount and kind and at rate applied for?' The answer to which is, 'No.'

"Now, it is alleged by the defendant that at the time this answer was made upon this policy, dated the 25th of April, 1906, the applicant, Max Solomon, had applied for insurance in the Hartford Life Insurance Company, and that his application had been rejected, or, at least, that he had not received a policy, and that, either if it was rejected, or if he had not received a policy, then his answer to question 11 was untruthful. Now, the burden was upon the defendant to establish that, because that is the only policy that it is alleged he had concerning which the issue could be raised as to the truth of this answer. Now, the defendant undertook to prove that, by producing a certain application made to the Hartford Life Insurance Company in the name of Max Solomon for a policy of insurance. Now, did the defendant establish that that application was made by Max Solomon? The application was signed with a mark, and therefore it was not possible to produce any evidence as to the signature, but the evidence would have to be by persons who were present at the time the mark was made. The defendant claims that his application, having been made in his name, he having been examined by Dr. Shildecker as to his health—which is written by Dr. Shildecker in this application, that he was present there—that all these circumstances, together with the fact that it was signed by a mark, show that this application was made by Max Solomon to the Hartford Life Insurance Company. The plaintiffs claim that this does not come up to proof by the weight of the evidence that this application was made; that application may have been made, and I believe counsel concedes that application likely was made in the name of Max Solomon for this policy, but it is insisted that the proof is not sufficient to satisfy you that it was made by Max Solomon. And therefore you take into consideration all the evidence offered on both sides, remembering that the burden is upon the defendant to satisfy you that Max Solomon did make this application to the Hartford—because that is the answer which showed the untruth of his answer in the application to the policy in suit.

"You will very carefully consider that evidence, and you have a right to take into consideration the fact that the agent who signs as a witness is not produced, Mr. Kann is not produced—the one witness who would be able to testify, who, having been a witness, should be able to testify to whether or not Max Solomon signed the application. *Because, you see, gentlemen of the jury, if he did not sign the application, then it was not his application.*"

It goes without saying that if the jury followed this instruction of the court, the evidential status of the Hartford application, created by its unchallenged admission in evidence, was swept away. The case was made to turn on the question whether Solomon had physically executed the paper, a fact that was not in issue, since the plaintiff had in effect eliminated that question by admitting the application in evidence without proof. And not only so, but the fact that defendant had not taken on itself the needless calling of the subscribing witness to prove an uncontested execution was called to the jury's attention as an omission which weighed against the defendant. These instructions, we are clear, involved such grave error against the defendant as called for the application of our rule 11, by virtue of which, "the court at its option may notice a plain error not assigned."

The judgment below is reversed, with a venire.